[No. A038582. First Dist., Div. Two. June 28, 1989.]

LARRY TINT, Plaintiff and Appellant, v.
BRUCE W. SANBORN, Defendant and Respondent.

## Counsel

Herbert G. Hawkins for Plaintiff and Appellant.

David R. Vogl, Geneva Wong Ebisu and Low, Ball & Lynch for Defendant and Respondent.

## Opinion

**PETERSON, J.**—Appellant contends that the jury was improperly instructed, and as a result awarded him inadequate damages in his nuisance action concerning the growth of his neighbor's trees. ■ This case raises the question of whether comparative negligence may be asserted as a defense in any action for damages to real property resulting from the alleged negligent maintenance of a nuisance. In affirming the lower court, we will

hold that jury instructions on comparative negligence are proper where defendant raises the issue of whether the nuisance of which plaintiff complains arose from defendant's negligent conduct.

## I. FACTS AND PROCEDURAL HISTORY

This appeal is brought based upon an engrossed settled statement on appeal, in lieu of the reporter's and the clerk's transcripts. We summarize the relevant facts in so far as they appear in the settled statement.

On February 7, 1984, appellant Larry Tint (Tint) filed this action alleging that respondent Bruce W. Sanborn (Sanborn) maintained a row of trees on his residential lot which interfered with Tint's view of San Francisco from his adjoining lot, resulting in a monetary loss to Tint when he was thereby allegedly prevented from selling his property. Sanborn's row of trees was alleged to violate a recorded declaration of restrictions applicable to the lots of both parties, which proscribed, inter alia, "tree planting . . . so as to constitute an unreasonable or substantial interference with the view enjoyed by any other lot." The declaration of restrictions further stated that "the violation of any restriction is a nuisance." The trees also were alleged to violate "the view ordinance of the City of Tiburon (Ordinance No. 235NS)."

The jury returned a verdict in Tint's favor in the amount of $12,500. Tint moved for a new trial contending that damages were inadequate and the jury improperly instructed. The trial court denied the motion, and Tint timely appealed.

## II. DISCUSSION

### A. *Comparative Negligence*

Tint's principal argument is that the jury was erroneously instructed to apply comparative negligence principles to his cause of action for nuisance. The parties have not cited, and our own research has not found, any California case which actually decides whether comparative negligence is a defense in an action for damages to real property sounding in nuisance. In the context of the record here, however, we believe that instruction to the jury on such a theory was proper.

The confusion in this case arises, in part, from the very word "nuisance." "The statutory definition of nuisance [Civ. Code, § 3479] appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property. As stated by Prosser: 'There

is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition.'" (*Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 919 [162 Cal.Rptr. 194], quoting Prosser, Law of Torts (4th ed. 1971) Nuisance, § 86, p. 571, fns. omitted.)

■ It has also been indicated that liability in nuisance may result from intentional acts, from negligence, or from strict liability as a result of engagement in ultrahazardous activity. *Dufour* v. *Henry J. Kaiser Co.* (1963) 215 Cal.App.2d 26 [29 Cal.Rptr. 871] held no error resulted in a case for damages resulting from introduction of sediment by defendant into plaintiff's downstream trout ponds because instructions on nuisance were not given. The court did, however, discuss private nuisance liability as follows: "To establish liability for private nuisance, plaintiffs must show that defendant's conduct fell into one of three classes (Prosser on Torts (2d ed.) p. 392). The evidence in this record wholly fails to show such ultrahazardous or abnormal conduct as would impose strict liability. No malice is shown, and thus a claim of intentional nuisance could be made only on evidence that defendant had actual knowledge that the harm to plaintiffs was substantially certain to follow . . . . The third basis for asserting nuisance is negligence. As to this the jury was fully instructed. Nothing would have been added by terming the claimed negligence a 'nuisance.' Damages in 'nuisance' or negligence are similarly measured." (*Id.* at pp. 29-30.)

■ The Restatement Second of Torts also recognizes that liability in nuisance can result from negligence and indicates that a plaintiff's negligence is a defense to such liability, stating at section 840B: "(1) When a nuisance results from negligent conduct of the defendant, the contributory negligence of the plaintiff is a defense to the same extent as in other actions founded on negligence. [¶] (2) When the harm is intentional or the result of recklessness, contributory negligence is not a defense."

California appears to follow the Restatement view in personal injury actions. In *Curtis* v. *Kastner* (1934) 220 Cal. 185, 192 [30 P.2d 26], our Supreme Court held that it was a question for the trier of fact whether plaintiff had been negligent in walking into rafters protruding from defendant's garage while trying to catch her puppy. The rafters protruded into an alley open to traffic and constituted a public nuisance which could be abated by public authority; and therefore, defendant could be liable in nuisance even though not negligent. (*Id.* at p. 188.) The court held, after an extensive discussion of cases from other jurisdictions, that contributory negligence barred recovery in actions for personal injuries in both negligence and

nuisance, at least where the nuisance "has its origin in negligence." (*Id.* at p. 191.)

In *Calder* v. *City etc. of San Francisco* (1942) 50 Cal.App.2d 837 [123 P.2d 897], this court (Div. 2) followed *Curtis* in finding that reversal was not warranted where the trial court instructed the jury on negligence principles in a nuisance case because "[a]s we view the situation presented by this record, a finding by the jury of nuisance would have necessarily presupposed a finding of negligence on the part of the defendant. Under these circumstances, we find no prejudicial error in the giving of the challenged instructions." (*Id.* at p. 840; see also *Vasquez* v. *Alameda* (1958) 49 Cal.2d 674, 676-677 [321 P.2d 1] [deciding, over a vigorous dissent, the question contrapositive to this one, of whether a *plaintiff* who creates a nuisance is thereby barred from suing a defendant whose negligence combines with the nuisance to injure plaintiff]; *Kafka* v. *Bozio* (1923) 191 Cal. 746, 748 [218 P. 753, 29 A.L.R. 833] ["The parties thus confused the issues herein by importing into the case questions of negligence and contributory negligence, which are wholly irrelevant to the action in so far as it seeks an *abatement* of the nuisance. There may be cases wherein the question whether the *maintenance* of a given condition amounts to a nuisance depends upon whether or not it is due to negligence . . . ." Italics added.].) The instant case, of course, seeks damages, not abatement.

Both *Curtis* and *Calder* provide support for the proposition that *contributory* negligence may be a defense in a nuisance action where the actual gravamen of the action is a claim for personal injuries similar to that of a standard negligence action. While neither provides the precise rule of decision here because they do not deal with *comparative* negligence as applied to a nuisance action alleging injury to *property,* they certainly weigh in favor of affirmance here. With the decision by our Supreme Court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 828-829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], that comparative negligence principles should replace contributory negligence rules, we believe that comparative negligence logically would become a defense in nuisance actions arising from negligence.

The instant case was tried to a jury on theories of nuisance and "deliberate" violation of the view ordinance. Tint had sold his residence prior to trial and the trees had been cut, so there was no issue remaining concerning the abatement of the alleged nuisance. Tint requested that the jury award him damages he claimed the nuisance proximately caused because of the delay in the sale and the reduced price he received for the property.

On this appeal neither the text of the declaration of restrictions nor the text of the view ordinance is in issue. We are not called upon to decide

whether either or both gave rise to private causes of action, as assumed by the parties and the lower court. The case was tried upon that assumption without objection raised by demurrer or otherwise. The record before us indicates that neither the parties nor the lower court apparently considered the many authorities (which we in no way here limit or disregard) indicating that a private cause of action for damages, based on a claim of violation of a law or ordinance, does not exist in favor of an adjoining landowner seeking damages for loss of view behind his neighbor's trees, fence, or building. (See, e.g., *Taliaferro* v. *Salyer* (1958) 162 Cal.App.2d 685, 689 [328 P.2d 799] ["The limitations in a building code do not confer on an adjoining landowner any such easement [over adjoining land for light and air]."]; *Katcher* v. *Home S. & L. Assn.* (1966) 245 Cal.App.2d 425, 429 [53 Cal.Rptr. 923] ["It has long been established in this state that a landowner has no easement over adjoining land for light and air *in the absence of an express grant or covenant.*" Italics added.]; *Wolford* v. *Thomas* (1987) 190 Cal.App.3d 347, 359 [235 Cal.Rptr. 422] [Plaintiffs "could claim no right to light, air, or view over the adjoining property."].) We will accordingly assume, for the purposes of this appeal, that the "express grant or covenant" (*Katcher* v. *Home S. & L. Assn., supra,* 245 Cal.App.2d at p. 429) of the recorded declaration of restrictions created a private cause of action for nuisance, because of Sanborn's interference with the view from Tint's lot by reason of Sanborn's tree planting. Thus we treat the local view ordinance of the City of Tiburon as irrelevant to the issue on appeal.

The case appears to have been tried on multiple theories, one of which was that the alleged nuisance could have arisen from negligent and not intentional conduct on Sanborn's part. ■ The record in this case, consisting only of plaintiff's confusing and garbled settled statement in lieu of a transcript, should be interpreted against the plaintiff, who thereby created any uncertainty in this regard.

Such uncertainty in the record, however, appears problematical. ■ While the complaint does not allege a nuisance negligently created, Sanborn clearly injected the negligence issue into the case by interposing an affirmative defense of comparative negligence in his answer, and sought and obtained instructions on the issue of comparative negligence. He thereby obviously contended by way of one defense to the allegations of Tint's complaint that, if a nuisance existed, it resulted from Sanborn's negligent conduct and not from his act of intentional harm. ■ A defendant has the clear right to request instructions on his theory of the case, if it is a reasonable theory of law which finds support in the evidence. (*Ng* v. *Hudson* (1977) 75 Cal.App.3d 250, 254 [142 Cal.Rptr. 69] ["It is settled that each party to an action has a right to have the jury instructed on all of his theories of the case which are supported by the pleadings and the

evidence."]; accord 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 240, pp. 246-247.) ██ Tint does not directly dispute this elementary rule; rather he simply contends that the comparative negligence of a plaintiff can never be raised in, or be relevant to, *any* action in which damages allegedly arising from the maintenance of a nuisance are sought. We reject Tint's argument in this case, in support of which he relies on an ambiguous statement in Witkin, and two decisions by this court (Div. 2) there cited. The Witkin quotation, now found at 6 Witkin, Summary of California Law (9th ed. 1988) Torts, section 1058, states: "The doctrine of contributory negligence apparently has no place in actions for damages for injuries to property." (P. 456.) From this quotation and the two cases decided by this court which Witkin cites in support, Tint reasons that the doctrine of comparative negligence, which has replaced contributory negligence in most contexts in California, also has no place as a defense to an action in nuisance alleging an injury therefrom resulting in monetary damage to property.

We need not pursue the rocky course of Tint's proposed syllogism because its premise is faulty. As our Supreme Court held in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at pp. 828-829: "For all of the foregoing reasons we conclude that the 'all-or-nothing' rule of contributory negligence as it presently exists in this state should be and is herewith superseded by a system of 'pure' comparative negligence, the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties. Therefore, in all actions for negligence resulting in injury to person *or property,* the contributory negligence of the person injured in person *or property* shall not bar recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering." (Italics added.) The Witkin quotation Tint relies on is difficult to reconcile with the current California law, as stated in the Supreme Court's decision in *Li,* and relies on pre-*Li* authority.

Thus we find the two cases decided by this court which are relied upon by Tint and cited by Witkin inapposite. In *Kleinclaus* v. *Marin Realty Co.* (1949) 94 Cal.App.2d 733, 736-739 [211 P.2d 582], we held that a plaintiff landowner's lawful use of his land, even though he maintained a clogged drainage ditch which caused waters negligently discharged on his land to accumulate and flood it, was not contributory negligence, i.e., plaintiff was not contributorily negligent for failure to anticipate the negligence of the adjacent landowner who caused the flooding. In *Atlas Assur. Co.* v. *State of California* (1951) 102 Cal.App.2d 789, 794-799 [229 P.2d 13], we rejected an argument that *Kleinclaus* was wrongly decided and ruled that the plaintiff landowner had undertaken no conduct which would bar recovery for

injury to his land through the negligence of an adjacent landowner, a railroad company whose freight car left its track and collided with a power pole, causing a fire to plaintiff's damage. We believe that *Kleinclaus* and *Atlas* were principally decided on the alternative grounds that the actions of the plaintiff landowners involved in those cases simply did not constitute negligence. (See *Atlas, supra,* 102 Cal.App.2d at pp. 798-799.) In any event those cases did not specifically involve nuisance claims arising from negligent conduct; and after *Li* they do not support the proposition urged by Tint, that contributory or comparative negligence does not apply in actions for injuries to property arising from the maintenance of a nuisance which is claimed to have resulted from negligent conduct.

The rationale stated in *Curtis* v. *Kastner, supra,* together with persuasive authority in the decisions of other jurisdictions, the guidance of learned treatises, and considerations of public policy support affirmance.

First, while the parties have not cited any cases from other jurisdictions, our own research has yielded a recent decision by the court of appeal of a sister state which is apposite.

*Sandifer Motors, Inc.* v. *City of Roeland Park* (1981) 6 Kan.App.2d 308 [628 P.2d 239] is a persuasive authority. There the Kansas Court of Appeal squarely held, in the context of a comparative fault system similar to California's and after an extensive and scholarly discussion of the issue, that it was proper for the trial court to instruct the jury on comparative fault principles in a nuisance action arising from negligence: "Thus, to the extent the city's nuisance arose from its negligence, the plaintiff's conduct which contributed to its injuries should be compared to the city's lack of care." (*Id.* at pp. 316-317 [628 P.2d at pp. 246-247].) A contrary result was reached in *Fletcher* v. *City of Independence* (Mo.Ct.App. 1986) 708 S.W.2d 158, where the Missouri Court of Appeal held instructions on comparative fault principles were properly refused in a nuisance action. *Fletcher* is inapposite in that its result depended upon the fact that comparative fault principles did not apply in Missouri at the time of the trial, that there was no evidence of fault on plaintiffs' part, and that the defendant requested no instruction on the issue. (*Id.* at pp. 170-171.)

The weight of authority from learned treatises and commentators, while not unanimous, also supports affirmance. We have previously alluded to the Restatement Second of Torts section 840B, which provides that: "(1) When a nuisance results from negligent conduct of the defendant, the contributory negligence of the plaintiff is a defense to the same extent as in other actions founded on negligence." Thus, under the rationale provided in the Restatement view as in *Sandifer Motors, supra,* the jury is properly instructed on

comparative fault principles to the extent the nuisance complained of arose, or is contended by any party to have arisen, from negligence.[1]

Commentators on California tort law appear to favor application of comparative fault principles in nuisance law. (See, e.g., 2 Levy, Golden, and Sacks, Cal. Torts (1985) Nuisance & Trespass, § 17.09[8], p. 17-52 ["Under current law, of course, the doctrine of contributory negligence has been replaced by the doctrine of comparative fault, under which plaintiff's negligence only partially reduces his or her recovery. Although the extent to which comparative negligence applies in nuisance cases has not been decided, it would appear that under the rule of *Curtis* [v. *Kastner, supra,* 220 Cal. 185], discussed above, comparative negligence would be a partial defense, at least when the nuisance action was based on negligent behavior."]; and Johns, Cal. Damages: Law and Proof (3d ed. 1985) Property Damage, § 6.2, subd. (b), p. 6-5 ["The doctrine of comparative negligence . . . applies in actions to recover damages for damage to, or destruction of, property . . . ."].)

We also believe that considerations of practicality and public policy favor such a rule. Whatever may be the virtues or vices of a system of comparative fault, it makes little sense to allow plaintiffs to suspend the presumed public policies involved by their unilateral decisions to bring an action for

---

[1] 4 Harper et al., Law of Torts (2d ed. 1986) Nuisance, section 22.8 is more equivocal and notes "the greatest confusion and diversity of views." (P. 327.) "The question whether contributory negligence is a defense to nuisance is complicated by the breadth and confusion that mark the concept of nuisance." (*Id.* at p. 318.)

"Nuisance is an older tort than negligence, but it has always been a broad and amorphous one. As late as the nineteenth century, negligence was thought of as simply one way of committing one of the recognized torts—for example, nuisance. This was the situation when contributory negligence appeared on the scene. Quite naturally, therefore, it was looked on as a defense to negligence wherever that was relied on as a ground of liability in any tort—including nuisance. . . . And today in such cases, *where a nuisance is grounded on negligence, contributory negligence is generally held to be a defense.*" (*Id.* at pp. 327-328, fns. omitted, italics added.)

On the question of extending principles of *comparative* negligence to the field of nuisance, the authors are more guarded. In discussing the extension of the "absolute nuisance" concept as an exception to the general rule that contributory negligence is a defense in nuisance cases, they opine: "To the extent that the impetus for such extensions has been dissatisfaction with the all-or-nothing aspect of contributory negligence, the tendency to extend the 'absolute nuisance' concept may lessen with the widespread adoption of comparative negligence. The resistance to the contributory negligence defense may, however, have been based on well-founded scepticism about the attractions of the fault system itself. *In that case a change to comparative negligence alone may not be enough to justify the introduction of fault system principles to areas that would otherwise be free of them, notwithstanding claims for doctrinal consistency.*" (*Id.* at 332, italics added; see also Prosser & Keeton, Law of Torts (5th ed. 1984) Nuisance, § 91, p. 652 [criticizing view stated in Rest.2d Torts that liability in nuisance results from "negligent" conduct: "Trespass and nuisance are terms that should describe intentional torts . . . ."].)

nuisance without specification as to how it was created, whether by negligence, intentional acts or strict liability, and thereby preclude consideration of comparative fault in the face of defense contentions that any claimed nuisance, if existing, was grounded in negligence. Put another way, there is no reason to allow negligent plaintiffs to sue on a simple allegation of nuisance in order to avoid the consequences of their comparative fault, if the issue of that nuisance arising from negligence is inserted in the case by the defense. Our system of compensation for injuries has become so dependent on the assessment of negligent fault, and its comparison, that we believe we should not create an exception in such nuisance cases absent a rational reason to do so.

Finally, to the extent that the system of comparative fault established in *Li* was intended to be a comprehensive one for injuries to person and property, we do not believe that any contrary doctrines of property law imbedded in the law of nuisance should be controlling over the system of comparative liability for negligence there established by the Supreme Court.[2]

We hold that a trial court properly instructs the jury on comparative negligence principles in a nuisance action alleging damages to real property where, as here, a defense claim is made that if a nuisance exists it arose because of defendant's negligence.[3]

B. *Other Issues*

Tint also argues that there was insufficient evidence of his comparative negligence to warrant an instruction to the jury. Although we do not have a transcript of the trial and are reviewing only on the basis of a settled statement, we find sufficient evidence of comparative fault by Tint, principally involving evidence of delay in seeking abatement of the nuisance and possible acquiescence to its existence, to warrant instruction on the issue.

---

[2] Cf., Calabresi and Melamed, *Property Rules, Liability Rules, and Inalienability: One View of the Cathedral* (1972) 85 Harv.L.Rev. 1089, 1110 ["[A] very common reason, perhaps the most common one, for employing a liability rule rather than a property rule to protect an entitlement is that market valuation of the entitlement is deemed inefficient, that is, it is either unavailable or too expensive compared to a collective valuation. [¶] We should also recognize that efficiency is not the sole ground for employing liability rules rather than property rules. Just as the initial entitlement is often decided upon for distributional reasons, so too the choice of a liability rule is often made because it facilitates a combination of efficiency and distributive results which would be difficult to achieve under a property rule."].

[3] We need not and do not decide here whether comparative fault principles could properly be applied to a nuisance which all parties concede arose from intentional or reckless conduct, or an ultrahazardous activity as to which strict liability in tort might be applied. Here negligence was one reasonable theory which finds support in the record before us, and instruction on that theory was proper.

Tint next argues that the trial court erroneously instructed the jury based upon BAJI No. 3.75, which defines proximate cause, rather than BAJI No. 3.76, which defines legal cause; and erroneously failed to give BAJI No. 3.77 (even though Tint did not request it), which defines concurring causes. Error, if any, was harmless, because the jury ruled in Tint's favor; and the giving of BAJI No. 3.77 would only have aided Sanborn's case, not Tint's. (See *In re Christian J.* (1984) 155 Cal.App.3d 276, 281 [202 Cal.Rptr. 54].)

Finally, Tint argues that it was error for the trial court to instruct the jury on the duty to mitigate damages. We reject this contention. ■ As Witkin correctly notes, an instruction on mitigation of damages is proper in actions sounding in negligence; and there was sufficient evidence here to warrant instruction on the issue. (See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1382, pp. 852-853.)

III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.